No. 60,980

STATE OF KANSAS, *Appellee,* v. DWIGHT HIGGINS, *Appellant.*

(755 P.2d 12)

Opinion filed April 29, 1988.

*Charles D. Dedmon,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* deputy appellate defender, was with him on the brief for appellant.

*Michael Grosko,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The defendant, Dwight Higgins, was con-

victed by jury trial of one count of aggravated robbery (K.S.A. 21-3427), one count of aggravated battery (K.S.A. 21-3414), and one count of aggravated burglary (K.S.A. 21-3716). Defendant was sentenced to a controlling term of imprisonment of fifteen years to life. He appeals from his conviction.

Defendant first contends that the State's attorney impermissibly commented upon his failure to protest his innocence after he was arrested. The subject of defendant's silence initially arose during the defense cross-examination of Detective Jerry Fiskus, a witness for the State.

"Q. [MR. PLUMMER] Did you ever approach this defendant, Dwight Higgins, concerning this matter?

"A. I did, yes.

"Q. Did you have an interview with him?

"A. I attempted to.

"Q. All right. And what did he tell you, if anything?

"A. I couldn't talk to Mr. Higgins in that he would not sign his waiver of rights. And because of that, and I was treating him as a suspect, I did not further the conversation past that.

"Q. Well, isn't it true, Detective Fiskus, that Dwight Higgins here denied any knowledge of this robbery?

"A. He would not talk to me. He did not wish to sign his waiver of rights. After that, I'm not allowed to talk to him.

"Q. Well, did you ever try and contact his attorney to see if he'd come down and give a statement?

"A. Truthfully I can't remember. I can't."

After the defense had completed its cross-examination of Fiskus, counsel for the State sought to explore the matter further. The following exchange took place at the bench between counsel and the court:

"MR. PLUMMER: Your Honor, I think we're clearly getting into an impermissible area of cross-examination. This witness interjected the fact of Mr. Higgins here relying on the advice of rights. I did not ask him that. All I asked was did he obtain a statement. That was it, and he said no. He didn't—he doesn't know why Mr. Higgins didn't give him a statement. I think we're getting into—

"THE COURT: Well, I don't know. Is that the state's position?

"MR. GROSKO: Yes, judge. He opened the door.

"THE COURT: I think he did just about as clearly as it can be done. He got into the fact he didn't give a statement, and why didn't he take a statement. He said he wouldn't sign his advice of rights form.

"MR. GROSKO: He asked him if he ever contacted his attorney about giving a statement. I think that does it even more.

"MR. PLUMMER: Well, yeah. But it's got it in there. I mean, I don't know how much farther he intends to go into that.

"THE COURT: He probably intends to go all the way into it. And I think at this point he's waived his right to keep the prosecutor from going into that. I mean, I guess you're going to go into the fact—

"MR. GROSKO: That he said nothing. That he didn't even deny it. He was told what he was there for, did you want to say anything, that he refused to sign the waiver and he refused to make any type of statement whatsoever, even a denial that's what happened.

"THE COURT: I just have to disagree with you. Your objection's sure noted, though."

The defendant's objection being overruled, the State then proceeded to question Fiskus in detail about the defendant's refusal to talk with Fiskus after the arrest.

The subject arose again during the State's closing argument.

"And let's look at Mr. Higgins. What evidence do we have about him from Detective Fiskus? Back in July, and you'll see the date on there, I guess about July 24th, Detective Fiskus is trying to complete his investigation as all detectives do. They try and get suspects in, tell them what they're looking at, give them an opportunity to give some explanation of what they did and what does this man do? He exercises his actual rights. There's nothing wrong with that. We have those rights. But he didn't even deny it. Picture yourself there. You're picked up. You're a suspect. They tell you what you're picked up for. You know you didn't have anything to do with it. So, why not tell the police at least that you didn't have anything to do with it? Or that I want to talk to my lawyer and I'll get back with you. You know, I might have an alibi. I want to check on what I was doing. Mr. Higgins had an opportunity to do all of those things back in July, but he refused to. And if he's so innocent as he sits there now, why didn't he avail himself of that opportunity? Again, use your common sense. Picture what you'd do in that situation."

Although, as the State notes, the defendant did not make a contemporaneous objection to the prosecution's comment during closing argument, the failure to object in the present case does not preclude review of the propriety of the prosecution's remarks. The defendant had objected to the State's original exploration of the subject during the redirect examination of Detective Fiskus. The defendant's objection had been overruled by the trial court and there is nothing in the record to indicate that a second objection at the time of the closing argument would have been more successful.

The defendant, however, is incorrect in characterizing a portion of the prosecution's closing argument as an impermissible

comment upon defendant's failure to testify at trial rather than his post-arrest silence. The defendant interprets the State's comment, "And if he's so innocent as he sits there now, why didn't he avail himself of that opportunity?" as a comment upon defendant's refusal to take the stand during the course of the trial. However, reading the remark in context, it appears clear that the comment is directed towards defendant's post-arrest silence rather than his refusal to testify during the trial. Read in context, the rhetorical question, "[W]hy didn't he avail himself of that opportunity?" refers to the time of defendant's arrest. Thus, the rule announced in *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, *reh. denied* 381 U.S. 957 (1965), and codified by K.S.A. 60-439, that a prosecutor in a criminal case may not comment upon the failure of the defendant to testify, was not violated in the present case.

The question, however, remains whether the State impermissibly commented upon the defendant's right to remain silent after his arrest. We find that question must be answered in the affirmative. In *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), the United States Supreme Court held that a defendant's silence after arrest and receiving *Miranda* warnings could not be used to impeach the defendant at trial, holding that such use constituted a violation of the due process clause of the Fourteenth Amendment. This court adopted the same rule in *State v. Mims*, 220 Kan. 726, 556 P.2d 387 (1976).

The State defends its comments upon the defendant's post-arrest silence by asserting that the comments were invited error. It is a general rule that a litigant may not invite error and then complain of that error on appeal. *State v. Gray*, 235 Kan. 632, 681 P.2d 669 (1984).

The invited error rule cannot be used as a pretext for the violation of a defendant's constitutional rights where there is no justification for so doing. In the present case, it is apparent that both the State and the trial court were aware that, ordinarily, no comment could be made regarding a defendant's post-arrest silence. Nor was there any necessity for the full exploration of the nature of the defendant's silence after his arrest and the State's comments during its closing argument. The sole motivation for the State's comments was the exploitation of the oppor-

tunity to utilize defendant's exercise of his Fifth Amendment *Miranda* rights against him. The present case does not involve a defendant who has invited or misled the court into error or who acquiesced in errors of the trial court. Nor did the defendant indulge in any improper or erroneous activities which required the State, in order to achieve a fair trial, to respond in kind. The cross-examination by counsel for the defendant was not an invitation to the State to violate defendant's right to due process. Rather, the State seized upon the opportunity to present evidence and arguments during closing which clearly violated the defendant's constitutional rights and were improper. The State cites *State v. Gray*, 235 Kan. 632, and *State v. Reynolds*, 230 Kan. 532, 639 P.2d 461 (1982), in support of its contention. Both cases are distinguishable from the present case and are not persuasive.

In *Reynolds*, the defendant complained of the admission into evidence of a photo identification session. The State did not mention the photo identification session in its case in chief. The defendant first broached the subject of the photo session on cross-examination of a State witness, and then pursued the issue further on direct examination of a defense witness by introducing the photo array into evidence. We held that, if there was error, the defendant invited the error by introducing the photos into evidence. In *Gray*, the trial court did not give a limiting instruction because of the defendant's objection. We held that the defendant invited the error by his objection and he could not complain on appeal of the court's failure to so instruct.

Moreover, accepting for the sake of argument the State's contention that the defendant had invited error, this rationale cannot be used to justify the extent of the State's actions in the present case. The defendant's attorney during the cross-examination of Detective Fiskus may have established the fact of defendant's silence after his arrest. However, the State in its closing argument went beyond the mere fact of defendant's post-arrest silence and entertained the jury with an extensive exploration of the motivations for defendant's silence. The State repeatedly asked, if defendant was innocent why did he not protest his innocence at the time of his arrest? Invited error, where the State ignores the scope of the invitation, does not justify the violation of a defendant's constitutional rights.

Finally, as to this issue, the State contends that, if there was error, it was harmless. The State argues that we should apply the standards set out in *State v. Jagger*, 11 Kan. App. 2d 350, 720 P.2d 673 (1986). In *Jagger*, the error was committed by the prosecutor in his closing comments upon the defendant's failure to testify. The prosecutor commented:

" 'That I think is the only point that is still in issue in this case, the defendant's intention. We had no direct testimony about Mr. Jagger's intention. Mr. Jagger is the only person who really knows of his own experience what his intention was.'" 11 Kan. App. 2d at 351.

The court rejected the State's contention that the error was harmless, stating:

"Mere comment, however, is not a per se constitutional violation requiring reversal. Only error which fails to meet the federal standard of harmless error, defined as belief beyond a reasonable doubt that the error did not contribute to the verdict, requires reversal. *State v. Knapp*, 234 Kan. 170, Syl. ¶ 7, 671 P.2d 520 (1983). Thus, if there is a reasonable doubt as to whether the comment contributed to the verdict, the conviction should be reversed.

"Although the above-mentioned rules are well defined, their application is more difficult.

"To facilitate the determination of whether a prosecutor's comments are harmless error, Kansas appellate courts consider the nature and extent of the comment in comparison with the strength of the evidence of the defendant's guilt, and further consider whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the defendant to testify. *Henderson*, 226 Kan. at 736; accord *State v. Ponds*, 227 Kan. 627, Syl. ¶ 4, 608 P.2d 946 (1980)." 11 Kan. App. 2d at 351-52.

In the present case, the error does not consist of just one question. The error is substantial and the statements were "manifestly intended," albeit based upon an incorrect belief it was justified as invited error.

*State v. Mims*, 220 Kan. 726, provides an excellent example of harmless error where the State comments about the defendant's post-arrest silence. In *Mims*, the defendant, at the time of arrest, told the police that he was not present at the scene of the crime because he was at his mother's upholstering a couch. At trial, he testified to that same alibi. The prosecutor on cross-examination asked Mims, " '[H]ow come you didn't tell this to the police about where you were on this particular day?'" 220 Kan. at 729. The question was pointless and contrary to the defendant's

testimony. The prosecutor admitted he may have misphrased the question. This court held the error was harmless, stating:

"We have concluded that it was improper for the prosecutor to ask the question and that he should not have done so. In asking the question the prosecutor entered a field of inquiry which he should have carefully avoided. We have concluded, however, that the single question asked by the prosecutor under all the circumstances does not justify a reversal of this case. As pointed out above it was undisputed in the evidence before the jury that the defendant did not remain silent at the time he was arrested but in fact gave a story of an alibi which he consistently asserted from the time of his arrest until the conclusion of the trial. The objection to the question was sustained although a mistrial was denied. In our judgment the single question propounded by the prosecutor which was never answered and to which an objection was sustained constituted harmless error beyond a reasonable doubt in view of the overwhelming evidence of the defendant's guilt disclosed in the record." 220 Kan. at 731.

In the present case, we have a reasonable doubt as to whether the comments contributed to the verdict and, therefore, conclude the error was not harmless.

The defendant next contends that the charges of aggravated battery under K.S.A. 21-3414, and aggravated robbery under K.S.A. 21-3427, are multiplicious and that he could not be convicted of both crimes, pursuant to K.S.A. 1987 Supp. 21-3107(2)(d). The defendant's argument is without merit.

In *State v. Garnes*, 229 Kan. 368, 624 P.2d 448 (1981), we said:

"Multiplicity in criminal pleading is the charging of a single offense in several counts. *State v. Dorsey*, 224 Kan. 152, 154, 578 P.2d 261 (1978). In that case we discussed many of our earlier opinions on the subject. Multiplicity exists when the State attempts to use a single wrongful act as the basis for multiple charges. The general principles for determining whether charges are multiplicitous are these:
(1)  A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution.
    *Example*: Where an aggravated assault or aggravated battery directly results in a homicide, the offenses become merged. See *State v. Clark*, 204 Kan. 38, 44, 460 P.2d 586 (1969).
(2)  If each offense charged requires proof of a fact not required in proving the other, the offenses do not merge.
    *Example*: The essence of aggravated robbery is to deprive a person of property, an element not found in homicide. Though a homicide is committed in the course of an aggravated robbery, the offenses do not merge. *State v. Rueckert*, 221 Kan. 727, 733, 561 P.2d 850 (1977). Similarly, federal bank robbery does not merge with State charges of aggravated robbery (of

an individual), aggravated kidnapping, and kidnapping. See *State v. Smith & Miller*, 224 Kan. 662, 669-670, 585 P.2d 1006 (1978), *modified on rehearing*, 225 Kan. 199, 588 P.2d 953, *cert. denied* 441 U.S. 964 (1979).

(3) Where offenses are committed separately and severally, at different times and at different places, they cannot be said to arise out of a single wrongful act.

*Example*: An assault and battery, following which the victim broke away, does not merge with and is distinct from forcible rape, which occurred at a later time and at a different place. See *State v. James*, 216 Kan. 235, 531 P.2d 70 (1975)." 229 Kan. at 372-73.

In the present case, the defendant and Cooper entered the filling station through a window. They looked around the back of the station to see what they could steal. Cooper testified that Mr. Beeley was sleeping in the front of the station, and they proceeded to the front to take the money in the cash register. Beeley evidently woke up, according to Cooper, and the defendant grabbed Beeley and Cooper hit Beeley over the head with a flashlight. Cooper proceeded to get the money while the defendant was standing on Beeley. Applying the principles enunciated in *Garnes*, it is apparent that the charges are not multiplicious. Neither crime is necessarily proved if the other crime is proved, since each crime contains unique elements not contained within the other crime. Aggravated battery requires the presence of an intent to injure the victim and requires the infliction of *great* bodily harm upon the victim. Aggravated robbery does not, requiring only the infliction of bodily harm. On the other hand, aggravated robbery requires the taking of property from another. Aggravated battery, of course, does not. The fact that the one application of force supplies the element of bodily harm for both offenses does not prevent the prosecution for both offenses. *State v. Chears*, 231 Kan. 161, 643 P.2d 154 (1982).

The defendant concedes that, in *State v. Warwick*, 232 Kan. 232, 654 P.2d 403 (1982), this court held that aggravated battery was not a lesser included offense of aggravated robbery. However, he argues that, pursuant to K.S.A. 1987 Supp. 21-3107(2)(d), he cannot be convicted of both offenses because, by proving aggravated robbery, the State necessarily proved aggravated battery. In *State v. Adams*, 242 Kan. 20, 744 P.2d 833 (1987), this court held that, under the facts of that case, DUI is a lesser

included offense of involuntary manslaughter. In so doing, we said:

"What we held in [*State v.] Arnold*, [233 Kan. 715, 576 P.2d 651 (1978),] and here reaffirm, is that the test to determine 'identity of elements' under [21-3107](2)(d) is twofold. First, the statutes defining the lesser offense and the greater offense must be compared to determine if all the elements of the former are included in the latter. Second, if that comparison fails to disclose an 'identity of elements,' then the court must examine the complaint/information to determine if the elements of the lesser offense are alleged, and if proof thereof is required to establish the greater offense. If it is, then it is a lesser included offense within the meaning of the subparagraph (2)(d).

". . . The allegation that defendant Adams drove an automobile while under the influence of alcohol served as one of the elements of the charged crime of involuntary manslaughter. By proving all of the elements necessary to establish involuntary manslaughter, the State *necessarily* proved each element of the crime of driving while under the influence of alcohol, as defined by K.S.A. 1986 Supp. 8-1567. Thus, having necessarily proven the lesser offense by proving the greater offense of involuntary manslaughter, the provisions of K.S.A. 1986 Supp. 21-3107(2) prohibit finding the defendant guilty of both involuntary manslaughter and driving while under the influence of alcohol. The necessity of alleging and proving that the defendant was driving while under the influence of alcohol precluded driving while under the influence of alcohol from being a 'factually related offense.' " 242 Kan. at 23-24.

In the present case, aggravated battery was not alleged nor was proof thereof required to establish aggravated robbery. It was a "factually related offense" and therefore not within the preclusion of K.S.A. 1987 Supp. 21-3107(2)(d).

In view of our decision, it is not necessary to address the other issues raised by the defendant.

The judgment of the district court is reversed and the case is remanded for a new trial.