No. 70,254

STATE OF KANSAS, *Appellee,* v.
CHRISTOPHER A. RINCK, *Appellant.*
(888 P.2d 845)

Opinion filed January 27, 1995.

*Hazel Haupt*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Jerome A. Gorman*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The defendant, Christopher A. Rinck, appeals his convictions and sentences for aggravated burglary, aggravated robbery, and aggravated battery. He claims the aggravated robbery and aggravated battery charges are multiplicitous. He also contends the court erred in its instructions, in not declaring a mistrial, in limiting cross-examination, and in sentencing him. We affirm in part, reverse in part, and remand for resentencing.

The facts are not in dispute. The charges against the defendant arise from an incident in which the defendant and two juvenile accomplices burglarized the residence of an 82-year-old woman. They stole a TV set and Tupperware containers filled with change from the victim's residence. During the course of the burglary, the defendant beat the victim over the head with a flashlight. The victim suffered a two-inch gash on the top of her head which required 10 stitches.

## Multiplicity

The defendant contends that the act giving rise to the aggravated robbery was also the same act giving rise to the aggravated battery. The basis for the aggravated robbery was the striking of the victim on the head. The basis for the aggravated battery was the striking of the victim on the head, causing severe injury to the victim.

The defendant argues that the charges of aggravated robbery and aggravated battery under the above circumstances are multiplicitous. We agree. In *State v. Warren*, 252 Kan. 169, Syl. ¶ 10, 843 P.2d 224 (1992), we said: "Aggravated robbery and aggravated battery convictions are multiplicitous if the same act of violence provided the basis for each conviction." The State acknowledges our holding in *Warren* but asks us to disregard it and follow the approach taken in the earlier case of *State v. Higgins*,

243 Kan. 48, 55-56, 755 P.2d 12 (1988). *Warren* controls this case.

In *Higgins*, we said that aggravated robbery and aggravated battery convictions were not multiplicitous because each crime contains unique elements not contained in the other crime. Aggravated battery requires the infliction of great bodily harm, while aggravated robbery requires only the infliction of bodily harm; aggravated robbery requires the taking of property from another, while aggravated battery does not. 243 Kan. at 55. We, therefore, concluded that neither crime is necessarily proved if the other is proved. 243 Kan. at 56.

However, the decision in *Higgins* was based on an analysis of the statutory elements alone for each offense and our conclusion that each offense required proof of a fact not required in proving the other. 243 Kan. at 55.

We rejected this approach in *Warren*:

"If the charges in this case are not multiplicitous because one charge involves proof of a fact not required in proving the other, then it leads to the conclusion that only crimes involving identical elements can be multiplicitous. This cannot be the case because this court has found crimes involving different elements multiplicitous. [Citation omitted.]" 252 Kan. at 182.

We also note that *Higgins* predates this court's decision in *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988). *Fike* established a two-prong analysis to determine lesser included offenses. Under the second prong of *Fike*, not considered by *Higgins*, the court must examine the allegations of the indictment, complaint, or information, as well as the evidence which must be adduced at trial, and if the allegations allege a lesser crime and the evidence which much be adduced at trial would also prove the lesser crime, the lesser crime is an included crime. 243 Kan. at 368. This court in *Warren* used the second prong of *Fike* to conclude that the defendant's convictions for aggravated robbery and aggravated battery were multiplicitous. 252 Kan. at 181.

The facts of this case are similar to *Warren*. In order to prove aggravated robbery in this case, the State was required to show that not only did the defendant and the others take property from the victim but that they inflicted bodily harm in so doing. The

State proved bodily harm by showing that the defendant beat the victim with a flashlight, causing injuries. The same evidence also proved aggravated battery—that the defendant beat the victim with a deadly weapon or in a manner whereby great bodily harm could have been inflicted.

*Warren* holds that where the same act of violence provides the basis for a conviction for aggravated robbery and a conviction for aggravated battery, the convictions are multiplicitous. 252 Kan. at 182. The defendant's conviction for aggravated battery is, therefore, reversed. Because we have reversed the defendant's conviction for aggravated battery, the defendant's contention that the court erred by not instructing the jury on the lesser included offense of simple battery becomes moot.

### Instructions

The defendant contends that the court's failure to give an instruction on what he claims is a lesser included offense of aggravated robbery, receiving stolen property under K.S.A. 21-3701(d), constitutes reversible error. The question of whether receiving stolen property under K.S.A. 21-3701(d) is a lesser included offense of robbery has not been decided by this court. In the case of *State v. Bowman*, 252 Kan. 883, 850 P.2d 236 (1993), we discussed this issue but did not need to resolve it because we concluded that the evidence did not warrant giving the instruction. We also conclude in this case that there is no evidence of record from which a rational factfinder might have found the defendant guilty of the offense of receiving stolen property. Under these circumstances, the trial court had no duty to give the instruction. See *State v. Lumbrera*, 252 Kan. 54, 71, 845 P.2d 609 (1992).

The defendant's argument that an instruction on receiving stolen property should have been given hinges on his claim that he told police the TV in the car belonged to his aunt, although his story at trial was that he thought the TV belonged to J.B., a juvenile accomplice. He argues that this provided substantial competent evidence from which a jury could find that he knew the TV was stolen but did not take part in the stealing of the TV.

The defendant's speculation that a jury might infer from his actions that he knew the TV was stolen, yet did not participate in the robbery, does not rise to the level of evidence from which a rational factfinder could have found him guilty of receiving stolen property. Neither the State nor the defendant presented any evidence that the defendant knew the TV set was stolen without taking any part in the robbery. The defendant denied taking part in the burglary and claimed upon first being questioned by police that the TV belonged to his aunt. Both juvenile accomplices testified that the defendant entered the victim's home, sprayed mace on the victim, and began beating her with a flashlight in order to obtain the location of her property. There simply was no evidence from which a jury might conclude that the defendant received stolen property and, thus, no duty to instruct.

## Mistrial

During trial, while the State was examining one of the juvenile accomplices, M.Y., the following exchange occurred:

"Q. [State]: How long did you know Christopher Rinck prior to this day?
"A. [M.Y.]: I've heard of his name and I've finally seen him after he got out of prison."

A short time later, while the witness was still testifying, the defense counsel approached the bench and stated:

"Mr. Huffman [Defendant's attorney]: I was looking at some papers and Ms. Calb informed me that this guy just testified that he saw my client after he got out of prison. That's clearly inappropriate and I move for a mistrial.
"The Court: Yeah, that's kind of gratuitous. I was wondering if you were going to let that one slide or not."

The State contends that because no contemporaneous objection to the statement was made, the defendant has not preserved his claim for appeal. The contemporaneous objection rule requires a timely and specific objection to the admission of evidence for the objection to be considered on appeal. *State v. Crabtree*, 248 Kan. 33, Syl. ¶ 1, 805 P.2d 1 (1991).

Given this very brief delay by defense counsel and the fact that the request for mistrial was advanced while the witness was still testifying, we conclude that the defendant has satisfied the con-

temporaneous objection rule. The question we must resolve is whether the court erred in denying the defendant's motion for a mistrial.

The declaration of a mistrial is a matter within the trial court's discretion and will not be disturbed absent a showing of abuse of that discretion. *State v. Cahill*, 252 Kan. 309, 314, 845 P.2d 624 (1992). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view of the trial court. 252 Kan. at 314.

K.S.A. 22-3423(c) provides that the trial court may order a mistrial because of prejudicial conduct which makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution. The defendant argues that M.Y.'s answer which revealed the fact that the defendant had been in prison made it impossible to proceed with the trial.

However, it is apparent that M.Y.'s answer was completely unsolicited by the State. In *State v. Mitchell*, 220 Kan. 700, 703, 556 P.2d 874 (1976), this court found no abuse of discretion in the district court's refusal to grant a mistrial when a witness testified that the defendant had been previously arrested for a similar offense. The *Mitchell* court reasoned that it is impossible for a court to exclude in advance an improper answer to a proper question and that because a limiting instruction was given and there was very little prejudice, the error was harmless. 220 Kan. at 703.

Similarly, in *State v. Hartfield*, 245 Kan. 431, 439-40, 781 P.2d 1050 (1989), this court found that the admission of evidence that the defendant was on parole, even if error, was harmless error in light of the overwhelming evidence against the defendant, the limiting instruction given to the jury, and the defendant's own subsequent statements that he was on parole. The *Hartfield* court reasoned that the evidence could not have affected the result at trial. 245 Kan. at 440.

The statement in this case was unsolicited. The court offered to give a limiting instruction, but the defendant refused the offer, deciding not to call attention to the statement. No further mention of the defendant's prior record was made during the trial.

We conclude that this single statement, under all the circumstances, could not have affected the result at trial. The trial court did not abuse its discretion in denying the defendant's motion for mistrial.

## Limitation of Cross-Examination

The defendant argues that the court denied him his right of confrontation under the Sixth Amendment of the United States Constitution by limiting his cross-examination of J.B., one of the juvenile accomplices. Specifically, the defendant argues that he should have been allowed to cross-examine J.B. about the amount of prison time he could have received had he been tried as an adult.

The Confrontation Clause of the Sixth Amendment affords the accused the right to cross-examination. *State v. Humphrey*, 252 Kan. 6, 17, 845 P.2d 592 (1992). A proper and important function of the right to cross-examination is the exposure of the witness' motivation in testifying. *Davis v. Alaska*, 415 U.S. 308, 316-17, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974). Generally, the right to cross-examine witnesses is subject to evidentiary rules, and the trial court has broad discretion in controlling the examination. *State v. Mitchell*, 234 Kan. 185, 188, 672 P.2d 1 (1983).

Error in restriction of cross-examination is subject to a harmless error standard if the reviewing court can declare beyond a reasonable doubt that the error had little if any likelihood of changing the result of the trial. *State v. Bowen*, 254 Kan. 618, 629-30, 867 P.2d 1024 (1993). However, there are certain circumstances in which the denial of effective cross-examination amounts to a constitutional error of such magnitude that no showing of prejudice is required for reversal. *State v. Humphrey*, 252 Kan. at 17.

In *Humphrey*, this court found reversible error when the district court denied the defendant the opportunity to cross-examine the key witness against him about whether she was presently working for the police. 252 Kan. at 17. Unlike Humphrey, the defendant in this case was allowed to cross-examine both M.Y. and J.B. about their respective plea bargains and elicited information that, in return for J.B.'s testimony, the State had dropped

one of the charges against him and agreed not to try him as an adult. Furthermore, during cross-examination, J.B. acknowledged that his juvenile punishment was a "slap on the wrist" compared to prosecution as an adult.

In *State v. Davis*, 237 Kan. 155, 157-58, 697 P.2d 1321 (1985), this court held that while an inquiry into any deal made by an accomplice witness in exchange for the witness' testimony is a crucial part of cross-examination, it was not an abuse of discretion for the district court to refuse to allow inquiry into the differences in the penalty provisions between the original and reduced charges as a result of the bargain where doing so would allow the jury to hear the penalty in store for the defendant if the defendant was found guilty. We reasoned that the defendant had been granted reasonable latitude in cross-examining the witness and had the opportunity to inquire as to whether any "deal" had been made. 237 Kan. at 158.

*Davis* is directly applicable to the instant case. Although the court did not allow the defendant to question J.B. as to the prison term he could have received had he been tried as an adult, the defendant was allowed reasonable latitude in inquiring as to the nature of the bargain he had made with the State. Under these circumstances, the court did not abuse its discretion.

Furthermore, even if the district court's restriction of the cross-examination could be characterized as error, the error is harmless. The court's restriction was not the "constitutional error of such magnitude that no showing of prejudice is required" contemplated in *Humphrey*. See 252 Kan. at 17. The court did not completely foreclose any cross-examination about whether a deal had been struck between J.B. and the State. Rather, the court allowed the defendant to elicit information showing that a deal had been struck and that the benefits included not only dismissal of a charge against J.B. but also an agreement not to try J.B. as an adult. The defendant was allowed to elicit information from J.B. that his juvenile sentence was extremely lenient compared with his possible adult sentence.

## Sentencing

The defendant was sentenced to a controlling sentence of 15

years to life in prison. He argues that the district court failed to consider his individual characteristics, circumstances, needs, and potentialities as required by K.S.A. 21-4601 and the sentencing factors found in K.S.A. 21-4606 and also failed to consider the sentences of M.Y. and J.B., who also participated in the crimes.

"K.S.A. 21-4606(2) sets forth seven factors which, while not controlling, are to be considered by the court in fixing the minimum term of imprisonment which is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime." *State v. McDonald*, 250 Kan. 73, 82, 824 P.2d 941 (1992). K.S.A. 21-4601 sets forth the legislative policy to be considered in the sentencing of criminal defendants so that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities. *State v. Richard*, 252 Kan. 872, 880, 850 P.2d 844 (1993). Although K.S.A. 21-4601 states the objectives of the corrections system, the sentencing judge need not explicitly consider those objectives as the judge must the sentencing factors enumerated in K.S.A. 21-4606. *State v. Webb*, 242 Kan. 519, Syl. ¶ 3, 748 P.2d 875 (1988).

The defendant's sentencing was held before Wyandotte County's sentencing board. The defendant's attorney spoke at length about the possible sentences that the defendant could be given compared to the sentences given to the juvenile codefendants. The State then reviewed the crime the defendant was convicted of, as well as the defendant's criminal history, and then asked the court to impose a sentence of 30 years to life. The board then retired to deliberate and later, without comment, sentenced the defendant to a controlling sentence of 15 years to life.

A review of the transcript indicates that the sentencing court made no mention of the factors found in K.S.A. 21-4606(2) and made no other comments that would indicate how it arrived at its decision. Where the sentence imposed exceeds the minimum, the legislature intended that the sentencing judge place on the record a detailed statement of the facts and factors considered by the judge. *State v. McDonald*, 250 Kan. at 82. However, failure to do so does not necessarily indicate that the court abused its

discretion. Each case is to be considered on its own facts. 250 Kan. at 82-83.

It has been held that a sentencing judge has complied with the minimum requirements by obtaining a presentence investigation (PSI) report which addressed the factors and inquiring if the report was accurate. *State v. Meyers*, 245 Kan. 471, 479, 781 P.2d 700 (1989). Also, in *State v. McDonald*, 250 Kan. at 82-83, this court found no abuse of discretion where the sentencing judge incorporated the PSI report as the reason for the sentence.

However, there is no indication in this record that the sentencing board actually reviewed the PSI report, much less incorporated it into their decision. The record gives no indication of how the board reached the sentences that it imposed or whether the board considered the individual characteristics, circumstances, needs, and potentialities of the defendant. "Judges cannot ignore the legislative policy and sentencing criteria set forth in the statutes when imposing a sentence. It is the duty of the judge to follow the legislative sentencing mandates." *State v. Richard*, 252 Kan. at 881. Where, as here, the record reflects no consideration of the sentencing factors found in K.S.A. 21-4606(2) or the sentencing policy found in K.S.A. 21-4601, the sentences imposed must be vacated and the case remanded for resentencing.

Because we remand for resentencing, we briefly address the defendant's second contention that the court abused its discretion by failing to consider the sentences imposed on M.Y. and J.B. when sentencing the defendant. In support of this contention, the defendant relies on *State v. Bailey*, 251 Kan. 527, 531, 834 P.2d 1353 (1992). In *Bailey*, this court held that when a defendant is sentenced, the sentence given to a codefendant should be considered and, if a longer sentence is imposed, the reason for doing so should be set forth on the record. 251 Kan. at 531.

However, *Bailey* is not applicable. The defendant is an adult and was sentenced accordingly. The codefendants in this case were juveniles and were treated in accord with the juvenile code. A juvenile proceeding is a civil proceeding, protective in nature and totally divorced from criminal proceedings. *State v. Muham-*

*mad,* 237 Kan. 850, 854, 703 P.2d 835 (1985). Juvenile offenders are not sentenced, as such, but instead receive a juvenile disposition. See K.S.A. 38-1603. Because of the difference in the nature of the proceedings, it was not error for the district court to fail to consider the dispositions of M.Y. and J.B. in sentencing the defendant.

The convictions for aggravated burglary and aggravated robbery are affirmed; the conviction for aggravated battery is reversed, the sentences are vacated, and the case is remanded for resentencing.