(23 P.3d 167)

No. 84,044

STATE OF KANSAS, *Appellee*, v. JASON ALEX FULTON, *Appellant*.

Opinion filed April 13, 2001.

*Janine Cox* and *Kirk Christopher Redmond*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Deborah Hughes* and *Tony W. Rues*, assistant district attorneys, *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before RULON, C.J., PIERRON, J., and ROGG, S.J.

PIERRON, J.: Jason A. Fulton appeals his convictions for aggravated burglary; conspiracy to commit aggravated burglary; aggravated battery; aggravated kidnapping; possession of opiate, opium, or narcotic drugs with intent to sell; failure to pay drug tax; and three counts of aggravated robbery.

Maurice Jones testified that Steven Hunter and Fulton forced their way into his house claiming Maurice owed them money for drugs he had stolen. Maurice gave them his rings, chains, and bracelet, but they demanded more. Maurice drove a Geo Prism to his parents' house where he got $2100 from under a mattress. Hunter kept him at gunpoint for the entire trip. Maurice and Hunter returned to Maurice's house where Fulton indicated he knew that Maurice was worth more money.

Fulton cut the side of Maurice's face with a steak knife. When Maurice said he did not have any more money, Fulton began cutting Maurice's chest. Maurice said he could get more valuables from his parents' house. Maurice drove to his parents' house, again

at gunpoint, and retrieved a 9 mm handgun and gave it to Fulton. They returned to Maurice's house. Still demanding $7000, Maurice called his father, Odell Jones, and told him he needed $7000.

The group left Maurice's house and checked into the Country Club Motel. Maurice testified his wrists were bound together with duct tape. In the motel room, Fulton repeated the demand for $7000 and Maurice again called his father who said he would have the money at his office. Later, the group left the County Club Motel and checked into the Days Inn Motel. Maurice testified he was forced to smoke marijuana and drink alcohol. After several hours, the group loaded into the Geo Prism again and Maurice was bound with duct tape. Fulton purchased additional duct tape and taped Maurice's wrists, ankles, mouth, and eyes. Maurice testified that after he was driven around for awhile, he was taken from the Geo Prism and placed into the trunk of another car. This car was parked in front of Fulton's mother's house. Maurice was freed when she heard pounding coming from the trunk and called the police. Later in the day, the police apprehended Fulton at the Days Inn Motel.

Odell testified about the two times Maurice came to his house on the evening of the incident and the phone calls requesting $7000. Odell stated he eventually went to the police station to report that Maurice had been kidnapped and was being held for $7000 ransom.

Fulton testified there was no kidnapping. Fulton claimed that Maurice, Hunter, Maleek Hughes, and he had conspired to extort money from Odell Jones. Fulton presented testimony from Rahmann Saleem who stated that the four men were at Hunter's sister's house the night before the alleged incident and were getting along and having fun together. As a rebuttal witness for the State, Hughes testified he did not participate in a kidnapping hoax involving Maurice, and he denied owning the Geo Prism in which the drugs were ultimately found.

A jury convicted Fulton on all counts. The trial court sentenced Fulton to 356 months' for aggravated kidnapping and then ordered consecutive sentences for the remaining charges. Fulton's sen-

tences were ordered to run consecutive to his sentence in an unrelated conviction for felony murder.

First, Fulton argues the State improperly commented on his silence. At the trial, during cross-examination, the State asked Fulton the following:

"Q. [BY MR. RUES] Well, you thought it was serious when law enforcement were talking to you, didn't you?
MR. ROSEL (DEFENSE COUNSEL): Judge, I'm not sure this has any relevance.
THE COURT: Overruled. I think it's proper cross. Overruled.
Q. (BY MR. RUES) You thought it was a very serious allegation against you when the police were talking to you on the 9th or the 14th. Correct?
A. Breaking the laws in general is serious, isn't it?
Q. Yes, but I'm asking about this particular event, Mr. Fulton.
A. Yes, Sir.
Q. It was serious that you would consider it. "Yes" or "no."
A. It was serious.
Q. But it wasn't serious enough for you to explain to law enforcement right then and there that this was a hoax?
MR. ROSEL: Judge, I will object. He has indicated that he contacted his attorney.
THE COURT: Well, that's not the same. Overruled.
MR. ROSEL: And that his attorney advised him —
THE COURT: That's not the same. Overruled.
Q. (BY MR. RUES:) Do you want me to ask the question again?
A. Yes, sir.
Q. Well, if you thought this was very serious, why didn't you think it serious enough to explain to everyone, including law enforcement, that this was made up, this kidnapping?
A. 'Cause they stated I was charged already with these crimes.
Q. But, even if you were charged, wouldn't you want to explain that it was a hoax or a story?
A. Wasn't nobody going to help me but my lawyer."

Fulton argues the State violated his constitutional rights by improperly introducing evidence of his post-arrest silence for purposes of impeachment.

It is unconstitutional for the State to elicit evidence at trial of a defendant's post-*Miranda* silence. *Doyle v. Ohio*, 426 U.S. 610, 618, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). In *Doyle*, two defendants were arrested and given *Miranda* warnings. They remained

silent at this time. However, at trial, the defendants made a viable argument that they had been framed. In order to impeach their testimony, the State cross-examined them about their failure to tell the frame-up story when they were first arrested. The Supreme Court held that the use of the defendants' post-arrest, post-*Miranda* silence in this manner violated due process:

"Despite the importance of cross-examination, we have concluded that the *Miranda* decision compels rejection of the State's position. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights, see *Michigan v. Tucker*, 417 U.S. 433, 443-444 [41 L. Ed. 2d 182, 94 S. Ct. 2357] (1974), require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See *United States v. Hale*, [422 U.S. 171, 177, 45 L. Ed. 2d 99, 95 S. Ct. 2133 (1975)]. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. at 617-18.

"A *Doyle* violation occurs when a defendant's post-arrest silence is used to impeach the defendant when an exculpatory explanation is subsequently offered at trial." *State v. Searles*, 246 Kan. 567, 572-73, 793 P.2d 724 (1990). In *State v. Edwards*, 264 Kan. 177, 195, 955 P.2d 1276 (1998), the Kansas Supreme Court stated:

"A *Doyle* violation occurs when the State attempts to impeach a defendant's credibility at trial by arguing or by introducing evidence that the defendant did not avail himself or herself of the first opportunity to clear his or her name when confronted by police officers but instead invoked his or her constitutional right to remain silent."

The State argues *Doyle* is not applicable since Fulton has failed to demonstrate he ever received a *Miranda* warning. The State cites *State v. Gadelkarim*, 256 Kan. 671, 685, 887 P.2d 88 (1994), where the court indicated it was impermissible to question or comment on a defendant's silence "at the time of arrest and *after* the accused has received the *Miranda* warnings." (Emphasis added.)

The State contends Fulton's factual assertions that he had been advised of his constitutional rights at the relevant time period are without keyed citation to the appellate record and unsupported by the evidence.

The State argues Fulton cannot invite error and then complain about it on appeal since Fulton testified on direct examination that he refused to make any statements to law enforcement at the time of his arrest. See *State v. Saleem*, 267 Kan. 100, 109, 977 P.2d 921 (1999) (a litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal).

The State's questioning of Fulton as to why he did not profess the innocence of the scheme at the time of his arrest clearly violated his right to remain silent. Similar to the facts in *Doyle*, the intentions of the State were clearly to impeach Fulton's credibility by cross-examining him on why he did not reveal this alternative motive/scheme when he was first arrested. The trial court should have sustained defense counsel's objection and admonished the prosecution to steer clear of that type of questioning.

We must therefore consider whether the State's misconduct was so prejudicial as to require a new trial. The appropriate standard of review for this issue is stated in *Gadelkarim*, 256 Kan. at 685:

"Claims that there has been an impermissible comment or question about a defendant's post-Miranda silence are measured by the harmless error standard. Only error which fails to meet the federal standard of harmless error, defined as belief beyond a reasonable doubt that the error did not contribute to the verdict, requires reversal. To facilitate the determination of whether a prosecutor's comments are harmless error, Kansas appellate courts consider the nature and extent of the comment in comparison with the strength of the evidence of the defendant's guilt, and further consider whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be, a comment on the failure of the defendant to testify. [Citation omitted.]"

Although we find the State violated Fulton's constitutional rights, we hold the error to be harmless. First, the comment on Fulton's silence constituted a little over 2 pages in a 666-page trial transcript. See *Brecht v. Abrahamson*, 507 U.S. 619, 638-39, 123 L. Ed. 2d 353, 113 S. Ct. 1710, *reh. denied* 508 U.S. 968 (1993) (improper references to a defendant's post-*Miranda* silence were

found to be harmless error because, *inter alia,* the references comprised less than 2 pages of a 900-page transcript and a few minutes in a 4-day trial).

Second, the State's error was not magnified through other testimony or in other parts of the trial. In *State v. Higgins,* 243 Kan. 48, 755 P.2d 12 (1988), the court rejected the State's contention that the error was harmless. Over objection, the prosecutor questioned a police officer in detail about defendant's refusing to talk to him after arrest, and in closing argument the prosecutor "entertained the jury with an extensive exploration of the motivations for defendant's silence. The State repeatedly asked, if defendant was innocent why did he not protest his innocence at the time of his arrest?" 243 Kan. at 52. See also *State v. Heath,* 222 Kan. 50, 53, 563 P.2d 418 (1977). In the current case, the constitutional error was mentioned only once and not repeated, as was the case in *Higgins* and *Heath.* We find the error to be an isolated instance.

Third, considering the nature and extent of the comment in comparison with the strength of the State's case against Fulton, we find the error to be nonprejudicial. While we agree with Fulton that his credibility was a central issue in the case, we find the evidence of his guilt through the testimony of Maurice and Odell Jones to be consistent and corroborated by the rest of the evidence in the case.

Finally, we note that Fulton injected the issue into the trial, albeit briefly, in his own direct testimony.

We find no reversible error.

Next, Fulton argues the trial court erred by failing to give the jury a unanimity instruction requiring agreement on which act constituted the crime of aggravated battery. Fulton contends the jury could have relied on four different acts to support the aggravated battery conviction: (1) when Fulton struck Maurice on the head with the gun; (2) when Fulton struck Maurice on the ear with the gun; (3) when Fulton cut Maurice on the face with a knife; and (4) when Fulton cut Maurice on the chest with a knife.

The court in *State v. Timley,* 255 Kan. 286, 289-90, 875 P.2d 242 (1994), explained the concept of a multiple acts case where several acts are alleged and any one of them could constitute the

crime charged. If a multiple acts situation arises, the jury must be unanimous as to which act or incident constituted the crime. To ensure jury unanimity, courts require that either the State elect the particular criminal act upon which it will rely for conviction, or the trial court should give the jury a unanimity instruction requiring them to agree on the underlying criminal act supporting the charge.

A unanimity instruction was not required in this case, because there were no multiple acts upon which the State attempted to rely for Fulton's conviction of battery.

The aggravated battery jury instruction gave the injury element as "great bodily harm" or "disfigurement," but then provided a detailed definition only of "disfigurement" and not of "great bodily harm." In conjunction with the jury instruction, the State was clear on the testimony it relied upon for the aggravated battery charge. In closing argument, the State made what we regard as the functional equivalent of a formal election among the incidents by focusing only on the cutting or "carving" of Maurice's face and chest and not the blows with the gun, stating:

"Let me back you up a second. There is one twist on this that comes back. That twist is before they go back to Odell's residence over on Lincoln - excuse me - Polk, that aggravated battery takes place. That's the carving. The carving also ties into the aggravated kidnapping. On the aggravated kidnapping, you have the bodily harm. On aggravated battery, you have the disfigurement. You saw the pictures, you saw him pull his jumper down. You decide, based upon those facts, if it fits within those instructions. We submit it does."

This focus and argument by the State was sufficient to ensure jury unanimity on the cutting versus the blows.

Fulton also argues that the cutting of Maurice's face was distinct from the cutting of his chest and that he required a unanimity instruction even if only those incidents are considered. The testimony does not support him.

Maurice testified that Fulton told him, "We're going to make you give us money," and then Fulton took a knife and cut the side of Maurice's face. When Maurice replied that he did not have any more money, Fulton used the same knife and cut or "carved" Jones' chest. This constituted one continuous incident, not two

multiple acts. If the cutting on the two parts of Maurice body had been charged separately, one charge would have been subject to dismissal as multiplicitous. See *State v. Staggs*, 27 Kan. App. 2d 865, 867, 9 P.3d 601 (2000).

Fulton next argues his convictions for aggravated kidnapping and aggravated battery are duplicitous. Fulton argues the crimes are duplicitous because the prosecution is relying on the cutting of Maurice Jones, one act, to convict him of both aggravated battery and aggravated kidnapping.

The established law in Kansas is that a charge of aggravated battery is not multiplicitous with a charge of aggravated kidnapping. In *State v. Diaz & Altemay*, 232 Kan. 307, 310-11, 654 P.2d 425 (1982), the court held that because the kidnapping charge did not require proof of all the elements of aggravated battery, the crimes could not be multiplicitous. Fulton acknowledges *Diaz* but argues the law of multiplicity is inapposite to the law on duplicity.

Duplicity is the joining in a single count of a complaint two or more distinct and separate offenses. Duplicitous charging confuses the defendant as to how he or she must prepare a defense and confuses the jury. *State v. Anthony*, 257 Kan. 1003, Syl. ¶ 9, 898 P.2d 1109 (1995). The problem with duplicity is that jurors are unable to convict of one offense and acquit of another offense when both are contained in the same count. *State v. Campbell*, 217 Kan. 756, 778, 539 P.2d 329, *cert. denied* 423 U.S. 1017 (1975).

The defendant mischaracterizes the issue as duplicity. Just as the court properly indicated in *State v. Mason*, 250 Kan. 393, 399, 827 P.2d 748 (1992), Fulton's reliance on authority quoted in *State v. Lassley*, 218 Kan. 758, 761, 545 P.2d 383 (1976), concerns multiplicity, not duplicity:

" 'In *State v. Lora*, 213 Kan. 184, 515 P.2d 1086, we stressed that duplicity [multiplicity] does not depend on whether the facts proved at trial are actually used to support the conviction of both offenses; rather, it turns on whether the necessary elements of proof of the one crime are included in the other.' 218 Kan. at 761." 250 Kan. at 399.

Fulton's charges of aggravated battery and aggravated kidnapping are not duplicitous. His argument is more akin to an issue of multiplicity of which we find no merit.

Fulton also challenges the sufficiency of the evidence supporting his conviction for possession of cocaine with intent to sell. Fulton argues there is not enough evidence to support a charge that he possessed the cocaine found in the Geo Prism outside of his hotel room.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

Officers testified that when they entered the hotel room, there were two double beds. There was a single female in one bed, and Fulton and another female in the other bed. Officer David S. Gifford stated that he did a quick perimeter sweep of Fulton's bed and picked up a large coat on the side of the bed. When Fulton was being moved into the hallway, he did not have a lot of clothes on. Officer Gifford stated he asked Fulton if he wanted his coat, the large coat Gifford was holding, and Fulton said yes. Inside the pocket of Fulton's coat were the keys to the Geo Prism parked in front of the hotel room.

When the officers searched the Geo Prism, they discovered a yellow bag on the passenger's front floor. The yellow bag contained a .45 caliber pistol and a .25 caliber pistol. Inside the yellow bag was also a gray bag which contained 48 individually wrapped baggies of cocaine. Among other things, officers discovered a roll of duct tape on the front floor of the car. Two finger prints were obtained from the duct tape and, after analysis, the fingerprints were matched to Fulton.

Fulton contends the State's only evidence that he possessed the cocaine was that he had driven the Geo Prism and he argues this limited evidence was insufficient as a matter of law to demonstrate that he possessed the drugs found in the car.

The evidence in support of Fulton's conviction for possession with intent to sell is circumstantial. That fact alone does not undermine Fulton's conviction. See *State v. Bullocks*, 2 Kan. App. 2d 48, 49, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978), citing *State*

*v. Faulkner*, 220 Kan. 153, Syl. ¶ 13, 551 P.2d 1247 (1976) ("Possession and intent, like any element of a crime, may be proved by circumstantial evidence."). Possession need not necessarily be immediate and exclusive but may be constructively established. *State v. Rose*, 8 Kan. App. 2d 659, 664, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983).

As the court stated in *Faulkner*:

"[W]hen illicit drugs are found in an automobile containing more than one person, the defendant's mere presence in the vehicle, without more, would not sustain his or her conviction for possession. Other circumstances which have been held sufficiently incriminating to link a defendant with illicit drugs in a vehicle are [the defendant's] previous participation in the sale of drugs, use of narcotics, proximity to the area where drugs are found, and the fact the drugs were found in plain view. While no one of these circumstances, by itself, may be sufficient to support a conviction, taken together they provide a sufficient inference of knowing possession to support a verdict." 220 Kan. at 160.

Other factors noted in cases involving nonexclusive possession include incriminating statements of the defendant, suspicious behavior, and proximity of the defendant's possessions to the drugs. *Bullocks*, 2 Kan. App. 2d at 50.

Construing the facts favorably to the prosecution, we find there was enough circumstantial evidence in this case for the jury to find Fulton guilty beyond a reasonable doubt of possession of cocaine with intent to sell. The evidence indicated that Fulton was in and out of the Geo Prism during the entire criminal incident. Fulton admitted that the keys to the Geo Prism were found in his coat pocket recovered at the hotel room, and he testified that he was the last person to drive the Geo Prism before the arrest.

Fulton argues that since he was the last known driver of the Geo Prism, the drugs found on the passenger side of the car cannot be construed as his. He contends the drugs were clearly in the possession of the front passenger and not him as driver. While Fulton's argument is more persuasive in a situation where a car is stopped with a number of occupants and drugs are found, the bag carrying the two pistols and 48 individually wrapped baggies of cocaine was found on the passenger floor board in a car where Fulton was the last known driver. The State also argues Fulton's knowledge of the

drugs can be inferred through the testimony that Fulton had previously participated in the sale of drugs. The State supports this inference through Maurice Jones' testimony that he had purchased Fulton's drugs at an extremely reduced rate and Fulton was looking to get the full value.

Finally, Fulton argues the trial court denied him his statutory right to allocution at the sentencing hearing.

The standard of review for denial of allocution is harmless error. *State v. Jones*, 24 Kan. App. 2d 669, 676, 951 P.2d 1302 (1998). "[E]rrors that do not affirmatively cause prejudice to the substantial rights of the complaining party do not require reversal when substantial justice has been done. [Citation omitted.]" *State v. Clark*, 263 Kan. 370, 376, 949 P.2d 1099 (1997).

At sentencing, the trial judge stated, "Mr. Rosel, do you have anything that you want to tell me, or does Mr. Fulton have anything that he wants to tell me." Defense counsel replied, "Judge, I would speak on behalf of Mr. Fulton," and then defense counsel asked the court to run the sentences concurrently and then concurrent with Fulton's unrelated conviction for felony murder. The trial court then specifically addressed Fulton, "All right. Now, Mr. Fulton, do you want to address the Court at all?" Fulton replied, "No, sir."

Fulton argues the trial court inquiry was insufficient to appraise him of his right to allocution. He states the law requires a very specific colloquy between the trial court and the defendant, and that he was deprived of his ability to influence the trial court's sentencing decision in hopes of mitigating his punishment.

K.S.A. 22-3424(e)(4) requires: "Before imposing sentence the court shall: . . . address the defendant personally and ask the defendant if the defendant wishes to make a statement on the defendant's own behalf and to present any evidence in mitigation of punishment."

Fulton cites two cases supporting his position that the right of allocution should be strictly construed. In both *State v. Heide*, 249 Kan. 723, 822 P.2d 59 (1991), and *State v. Spencer*, 252 Kan. 186, 843 P.2d 236 (1992), the court remanded for resentencing based on a violation of the defendant's right of allocution. In *Heide*, the

court asked the defendant "if he had any legal reason why judgment, order, and sentence should not be imposed" 249 Kan. at 726; in *Spencer*, the court addressed the defendant as follows: "[B]efore I proceed to sentencing, are there any comments you want to make to the Court?" 252 Kan. at 187. Fulton argues his case is indistinguishable from *Heide* and *Spencer* and we should remand for resentencing.

The parties agree that the trial court did not strictly comply with K.S.A. 22-3424(e)(4). The trial court specifically asked Fulton if he wanted to address the court, but the court did not inquire whether Fulton wished to make a statement or present evidence in mitigation of punishment. Although the trial court erred in not following the mandate of the allocution statute, we find the error harmless by a lack of prejudice to Fulton. The court in *State v. Borders*, 255 Kan. 871, 879 P.2d 620 (1994), stated:

"We believe the requirement of a showing of prejudice to the substantial rights of the defendant is equally applicable to alleged violations of the allocution statute as it is to the many other areas of criminal procedure where prejudice must be shown to justify a reversal. The defendant here has shown absolutely no prejudice, and while failure to comply with a mandatory statute, such as K.S.A. 1992 Supp. 22-3424(4), is error, but not reversible error unless prejudice to the substantial rights of the defendant is shown." 255 Kan. at 881.

In *State v. Hunt*, 257 Kan. 388, Syl. ¶¶ 9, 10, 894 P.2d 178 (1995), the court stated:

"K.S.A. 1994 Supp. 22-3424(4) states in pertinent part: "Before imposing sentence the court shall: . . . (d) address the defendant personally and ask the defendant if the defendant wishes to make a statement on the defendant's own behalf and to present any evidence in mitigation of punishment." This provision in K.S.A. 22-3424(4) establishes the right of a defendant to allocution, and this right is not waived by the defendant's silence or by argument of counsel."

"For a defendant to successfully assert error based upon a denial of the opportunity to present evidence in mitigation of punishment pursuant to the right to allocution in K.S.A. 1994 Supp. 22-3424(4), the defendant must make a proffer of the contemplated evidence comparable to that required by K.S.A. 60-405."

The only prejudice Fulton claims is that he personally did not have the opportunity to argue that his sentences should run concurrent with each other. Although we recognize that statements of counsel are no substitution for the right of allocution, *State v.*

*Webb*, 242 Kan. 519, Syl. ¶ 1, 748 P.2d 875 (1988), we realize Fulton has raised no argument, or proffered any contemplated evidence, that was not argued to the trial court by defense counsel. Fulton has not made the requisite proffer of the contemplated evidence, nor does the record show that his substantial rights were prejudiced. We do not find Fulton was prejudiced by the court's failure to provide allocution. The denial of allocution was harmless error.

Affirmed.