NOT DESIGNATED FOR PUBLICATION

No. 113,864

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

TERRY YOUNG,
*Appellant.*


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed November 18, 2016. Affirmed in part, reversed in part, and remanded with directions.

.


*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.


*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., POWELL, J., and STUTZMAN, S.J.


*Per Curiam*:  In February 2015, a Reno County jury convicted Terry Young of criminal damage to property, a severity level 9 nonperson felony, and two counts of criminal threat, severity level 9 person felonies. The district court sentenced Young to consecutive sentences of 12 months for the criminal damage and 6 months each for the criminal threats, resulting in a controlling sentence of 24 months in prison. Young's criminal history category C made probation the presumptive disposition, and the district court placed him on probation for 12 months to be supervised by community corrections.

1

Young timely appeals, presenting three issues: (1) the criminal threat convictions are multiplicitous; (2) the district court erred when it denied his motion for mistrial; and (3) the district court erred when it failed to credit him with 9 months of jail credit.

FACTS AND PROCEDURAL BACKGROUND

On an afternoon late in November 2013, Camille Wuthrow was in her home when she heard a loud banging sound. She asked her stepson, Anthony (Tony), if he was making the noise, and he said he was not. So Camille and Tony stepped outside to investigate. The source of the noise became apparent when they saw Terry Young beating on their pickup truck with a metal baseball bat. Young was a neighbor who lived two houses away. Camille and Tony testified Young was about 20 to 25 feet away when they came outside.

The situation deteriorated as, when Young began to walk away, Tony yelled "Hey!" at Young, and Young turned around. Young appeared to be quite angry, yelled profanities at Camille and Tony, and told them he was going to kill them. According to Tony's testimony, Young walked toward them with the bat raised. Young's actions scared Tony and Camille, and they stepped back inside their home. Camille called 911, and Tony told his father, Arlis (A.J.), what was happening. A.J., Camille, and Tony then went outside. Still holding the bat, Young continued to yell profanities and threatened to kill A.J. and burn his house down.

When police officers arrived, Young had returned to his home. An officer talked with the Wuthrows, then went over to Young's house and knocked on the door. No one answered the door, although sounds could be heard of someone inside yelling and making bizarre comments. The officers decided to back away and observe Young's home to see if he would come outside. About 45 minutes later, Young did come out, apparently upset and making strange comments and threats. He saw one of the officers and went back

2

inside. After about another 45 minutes, Young came outside again, this time carrying a box. He still appeared angry and was screaming, and although officers had weapons pointed at him, he refused to drop the box. Finally, officers chased him down and he was apprehended as he tried to run away. The officers later testified that Young was angry, upset, and screaming throughout the time it took to get him into custody.

In February 2015, Young went to trial, charged with three counts of aggravated assault, three counts of criminal threat, and a single count of felony criminal damage to property. A.J., Camille, and Tony were each an alleged victim of one of the counts of aggravated assault and one of the counts of criminal threat. At trial, the jury saw evidence that the damage to the Wuthrows' truck was more than $2,800, as well as evidence of damage to the siding of their house, which Young also had hit with the bat. The State presented witnesses who testified to the facts just described, and Young chose not to present evidence. The jury convicted Young of criminal damage to property and two counts of criminal threat (Camille and Tony) but acquitted him of the three aggravated assault charges and the count for criminal threat to A.J.

ANALYSIS

*Were Young's two convictions for criminal threat multiplicitous?*

We consider this issue only briefly, as the State acknowledges that the two criminal threat convictions are multiplicitous. Multiplicity is the charging of a single offense as more than one count on a charging document. We have unlimited review of multiplicity challenges, as they present questions of law. *State v. Pham*, 281 Kan. 1227, 1246, 136 P.3d 919 (2006). Multiplicity opens up the possibility for multiple punishments for a single offense, which violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. 281 Kan. at 1246.

3

To determine whether the convictions are for the same offense, we ask two questions: (1) Do the convictions arise from the same conduct, and (2) based on the statutory definition, are there two offenses or only one? *State v. Schoonover*, 281 Kan. 453, 496, 133 P.3d 48 (2006). To determine whether the convictions arise from the same conduct, we look at a variety of factors, such as whether the acts occurred at or around the same time or in the same place. 281 Kan. at 497. To determine whether there are two offenses or only one when the question involves multiple convictions under a single statute, we use the unit of prosecution test, which looks at what conduct the legislature has defined as a single violation of the statute. 281 Kan. at 497-98. That conduct is a "unit of prosecution," and a person can only be convicted once for each unit. 281 Kan. at 497-98. The key is the nature of the conduct prohibited rather than the number of victims or the number of physical actions. 281 Kan. at 472.

The answer to the first of the two questions is clear. In this case, Young's two criminal threat convictions were based on the same conduct, a single act—the threat he made to Camille and Tony as they stood together, telling them he was going to kill them. The answer to the second question is found in *State v. King*, 297 Kan. 955, 305 P.3d 641 (2013), in which our Supreme Court applied the unit of prosecution test to K.S.A. 21-3419, predecessor to the current version of the criminal threat statute, K.S.A. 2015 Supp. 21-5415. After analysis, the court held "we must presume that the unit of prosecution defined in K.S.A. 21-3419(a)(1) is a single communicated threat; a communicated threat constitutes only one offense even if it is perceived and comprehended by multiple victims." 297 Kan. at 975.

A second conviction for Young's single criminal threat is multiplicitous; we find one of his convictions for criminal threat must be reversed and the case is remanded for resentencing.

*Did the district judge err in denying Young's motion for mistrial?*

In the State's direct examination of A.J., the following exchange occurred:

> "Q: Okay. Sir, that particular day, when you saw the defendant, how, how would you characterize he was acting?
> "A. Um, very similar to every other time. He's on, on—strung out. Whatever he's on. He was yelling and screaming.
> "[Defense counsel]: Judge, can we approach?
> "(An off the record discussion was held between Court and Counsel.)"

The content of that off the record discussion was later placed on the record, outside the presence of the jury. The discussion centered on whether A.J.'s testimony, potentially alluding to drug use by Young, had been so prejudicial that a mistrial should be declared.

> "MS. DRISCOLL: I just need to note for the record after [A.J.] made the statement that, that inferred in my mind drug usage on behalf of Mr. Young, we had approached the bench. I had again asked for a mistrial because I said that violated the Court's order [excluding any evidence of specific instances of prior bad acts by Young]. Mr. Maxwell [the prosecutor] did indicate that he had instructed his witness on several occasions to—well he didn't exactly say what he instructed. That he had instructed his witness on several occasions and I asked for a mistrial. It violates the Court's order. It's extremely prejudicial. That there's no evidence being offered and that [d]efense [of voluntary intoxication] is not being used. I don't know how you get around that. You don't.
> "MR. MAXWELL: First off there's no specific misconduct he's talking about. You don't know what that means. It's a pretty ambiguous statement and I did ask the witness not to discuss specific incidents of misconduct. I did tell him how he knows the defendant, his relationship with the defendant was admissible. If I asked him questions, he would know it. I don't think his response was responsive to the question but it doesn't prejudice the defendant and it's a pretty ambiguous statement. The jury doesn't know that, what that means.

"MS. DRISCOLL: Strung out, I don't know what other explanation could be used for the word strung out. There's only one.

"THE COURT: Ms. Driscoll, you've been a Defense attorney too long.

"MS. DRISCOLL: Maybe. Maybe so, ma'am.

"THE COURT: Strung out is not too definitive and indicative of illegal activity that the Court did not feel like it would prejudice the jury. Single mom[]s are strung out with the burdens of single motherhood. So I am not granting the request for a mistrial. So, okay."

A district court may declare a mistrial if, among other reasons, there is "[p]rejudicial conduct, in or outside the courtroom, [that] makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." K.S.A. 22-3423(1)(c). To decide a motion for a mistrial, the district court must answer two questions: (1) Was there a fundamental failure in the proceeding, and (2) is it possible to continue the trial without injustice (either because the failure was harmless or can be corrected with a jury instruction or admonition)? *State v. Santos-Vega*, 299 Kan. 11, 23-24, 321 P.3d 1 (2014). On appeal, we review the district court's answers to both questions for an abuse of discretion. *State v. Armstrong*, 299 Kan. 405, 442, 324 P.3d 1052 (2014). A court abuses its discretion when its action is based on an error of law or facts or is otherwise arbitrary or unreasonable. 299 Kan. at 442.

From the transcript, it's not completely clear whether the district court ruled that A.J.'s statement did not constitute a fundamental failure of the proceeding or that it was a failure but was harmless: the district court just "did not feel like it would prejudice the jury." We will look at whether the district court abused its discretion on either question.

Young argues that A.J.'s statement that Young was "strung out" and "on" something was evidence of a specific instance of prior wrongdoing that is not relevant to this case and should not have been admitted. The question of evidence under K.S.A. 60-455 had been considered before trial, and the district court had granted Young's pretrial

6

motion to exclude any evidence of his prior bad acts, specifically, evidence of his prior criminal record, his previous interactions with law enforcement, or his reputation for criminal activity. A.J.'s response to the prosecutor's question did not fit into any of those categories. His description that Young was "strung out" or "on" something on the day that he damaged A.J.'s truck and threatened Camille and Tony is very different from, for example, the testimony A.J. gave at the preliminary hearing, where he talked about specific past instances of Young threatening him or his family. A.J.'s response at trial did suggest illegal activity other than the crimes Young was being tried for, and Young argues that "strung out" could only refer to being on drugs. The illegal drug inference Young proposes for "strung out" may be common, but as the district court pointed out, the term can be used in other ways. We do not find the comment was of such significance that it amounted to a fundamental failure of the proceeding.

Even if we assume that A.J.'s statement was improper, the district court did not abuse its discretion by denying the mistrial motion. A.J.'s statement was made in passing and stood alone—nothing else in the trial suggested that Young used drugs. Instead, the testimony focused closely on Young's behavior, without speculation about the reasons behind it.

Camille and Tony both testified that Young had seemed extremely angry, and police officers testified to Young's strange conduct before he was arrested, but none of them discussed the reasons Young was acting the way he was. Additionally, A.J.'s reference to drug use wasn't solicited; the prosecutor just asked A.J. to characterize Young's actions. See, *e.g.*, *State v. Rinck*, 256 Kan. 848, 853-54, 888 P.2d 845 (1995) (finding no abuse of discretion in denying mistrial motion where statement was unsolicited and completely isolated). In light of the record as a whole, which had ample evidence of the range of behavior Young exhibited that day, the single response about Young appearing to be strung out or on something did not make it impossible to continue

7

the trial without injustice. The district judge did not abuse her discretion by denying the motion and moving on with the trial.

We affirm the district court's denial of Young's motion for mistrial.

*Did the district court err in not including Young's jail credit on the Kansas Sentencing Guidelines Journal Entry of Judgement?*

Finally, Young argues the district court's failure to include any jail credit on his sentencing journal entry of judgment was error. He contends he spent approximately 9 months in jail, solely attributable to this case, before he was able to post bond. The State does not dispute Young's claim to the credit, frankly stating in its brief that "[t]he State does not dispute that at the time of sentencing the Defendant was entitled to approximately nine months [of] jail credit on his sentence." At sentencing, the district judge declined to impose a jail sanction as a condition of probation, commenting that her restraint was based on the fact that Young had spent 9 months in jail before release on bond.

In spite of the agreement all around that Young is entitled to the credit, the State does not concede that the journal entry should be corrected. In fact, the State argues that "[o]n appeal, the Defendant mischaracterizes the omission of jail credit on his journal entry as a mistake. It was not." The State then briefs, at some length, its rationale for purposely *excluding* Young's jail credit.

In short, the State asserts that jail credit should not be documented in the place shown on the Kansas Sentencing Guidelines Journal Entry of Judgment (in this case Section VI.5, on page 4)—the form prepared for that purpose by the Kansas Sentencing Commission—because Young was granted probation rather than being placed in the immediate custody of the Kansas Secretary of Corrections for service of his prison

8

sentence. Under the procedure advocated by the State, Young's jail credit should be calculated and recorded only if he failed on probation to the point that the court revoked probation and ordered that his underlying sentence be served.

Notwithstanding the State's disquisition on the shifting and evermore complex administrative burdens associated with determining a defendant's jail credit, its conclusion that entering jail credit on the journal entry at sentencing is an "extreme hardship" is unpersuasive. This issue is readily resolved by the clear statutory instruction from the legislature in K.S.A. 2015 Supp. 22-3426, dealing with "Record of Judgment; form and content of journal entry," which directs:

"(d) For felony convictions for crimes committed on or after July 1, 1993, in addition to the provisions of subsections (a) through (c), *the journal entry shall contain the following information*:

(1) Court case number;

(2) Kansas bureau of investigation number;

(3) case transaction number;

(4) court O.R.I. number;

(5) the type of counsel;

(6) type of trial, if any;

(7) pretrial status of the offender;

(8) the date of the sentencing hearing;

(9) a listing of offenses for which the defendant is convicted;

(10) the criminal history classification;

(11) the sentence imposed for each offense including postrelease or probation supervision durations;

(12) whether the sentences run concurrently or consecutively;

(13) *amount of credit for time spent incarcerated;*

(14) period ordered in county jail as a condition of probation;

(15) a listing of offenses in which a departure sentence is imposed;

(16) type of departure sentence; and

(17) factors cited as a basis for departure sentence.

9

*The journal entry shall be recorded on a form approved by the Kansas sentencing commission.*" (Emphasis added.) K.S.A. 2015 Supp. 22-3426(d).

Since Young was convicted of crimes that were felonies committed after July 1, 1993, K.S.A. 2015 Supp. 22-3426(d)(13) controls. The legislature decided on a broad range of information that needed to be recorded to fully document all aspects of a defendant's sentencing. Including the jail credit on his sentencing journal entry was not optional, irrespective of firm beliefs the State may hold about the advisability of handling it in a different way.

In practice, the work required to do jail credit calculations contemporaneously with sentencing may be less than the work involved at a later time. At that later date, reconstructing the data can be more difficult when different prosecutors, defense counsel, and judges may be involved and memories of earlier proceedings are cloudy. For some shorter underlying sentences, a running calculation is essential even without probation revocation, to ensure that multiple probation sanctions do not exceed the underlying sentences.

Young asks that we remand for calculation of his jail credit and correction of his journal entry. As we find the district court did erroneously fail to include the jail credit, we remand for the court to determine the jail credit to be included on the amended journal entry of sentencing.

Affirmed in part, reversed in part, and remanded for resentencing and correction of the sentencing journal entry.