NOT DESIGNATED FOR PUBLICATION

No. 114,514

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ARTURO AMBRIS-MORALES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; CLINT B. PETERSON, judge. Opinion filed May 5, 2017.
Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Russell Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN, J., and BURGESS, S.J.

*Per Curiam*: Arturo Ambris-Morales appeals his jury conviction for aggravated criminal sodomy. He complains the district court erred in not granting his motion for mistrial and the prosecutor, during his rebuttal closing argument, committed error. Upon review of the record, we find the district court did not abuse its discretion when it denied the motion for mistrial. Additionally, we find the prosecutor's comments during his rebuttal closing argument were error but were harmless error. We affirm.

1

On December 27, 2012, Margaret Moreno took two of her granddaughters to visit one of her sisters in Liberal. Ambris-Morales, Moreno's husband of 5 years, accompanied her.

At bedtime on December 28, the two granddaughters went to bed in a room with Ambris-Morales while Moreno stayed up to talk with the other women. One of the granddaughters, I.S., who was 6 years old, was wearing an oversized t-shirt-style nightgown and underwear. I.S. started the night on a mattress on the floor with her cousin, but then she and her cousin moved onto the bed with Ambris-Morales.

At some point during the night, I.S. awoke to find her nightgown pushed up above her waist and her panties pulled down. Ambris-Morales had pushed I.S.'s legs apart and had placed his head between her legs. He had his mouth on her pubic area and was sticking his tongue into her vagina. I.S. was uncomfortable and scared. She returned to the mattress on the floor for the remainder of the night.

The next morning, I.S. was crying, and Moreno asked her what was wrong. I.S. told her what Ambris-Morales had done, and Moreno confronted him. Ambris-Morales denied touching I.S. inappropriately, but Moreno told him to leave the house. Moreno did not call the police or take I.S. to the hospital for an examination. Later, Moreno called Ambris-Morales and told him that he needed to admit what he had done if he wanted forgiveness. According to Moreno, Ambris-Morales then admitted that he was sick and needed help.

Moreno returned home with her granddaughters on December 30. Shortly after they returned, Moreno and I.S. both told I.S.'s parents what had occurred. On January 13,

2013, I.S.'s parents took her to see Miah Cartwright, a forensic interviewer specializing in child-victim protocol. I.S. repeated her allegations with minor discrepancies.

Ultimately, Ambris-Morales went to trial on the charge of aggravated criminal sodomy, and a jury convicted him. Ambris-Morales filed a motion for a sentencing departure. At the sentencing hearing, the district court denied the departure motion and sentenced Ambris-Morales to imprisonment for life without the possibility of parole for 25 years with lifetime postrelease supervision.

Ambris-Morales timely appeals his conviction.

ANALYSIS

*We observe there was no abuse of discretion.*

Ambris-Morales first claims the district court should have declared a mistrial based upon the improper testimony of Moreno violating the court's pretrial order in limine forbidding admission of other allegations of sexual acts. Prior to trial, the State filed a motion to admit evidence that Ambris-Morales had been accused of improper sexual acts with Moreno's other granddaughter in Nebraska. The State sought to admit the evidence under K.S.A. 2016 Supp. 60-455(b) to demonstrate identity, opportunity, motive, and absence of mistake. The State also argued the evidence was admissible under K.S.A. 2016 Supp. 60-455(c) as propensity evidence for sex offenses. After reviewing the statute, the district court denied the State's motion and issued an order in limine to restrict the State from asking questions about the other granddaughter.

During defense counsel's cross-examination of Moreno, the following exchange took place:

3

"Q.  After [Ambris-Morales] left you where did he go?

"A.  I don't know. There in Liberal. Here in Liberal somewhere. I don't know. I don't know.

"Q.  Okay.

"A.  I didn't go looking for him.

"Q.  Well, you talked to him more than just that once, isn't that true?

"A.  I talked to him twice.

"Q.  And you called him actually a few times, didn't you?

"A.  I called him back but I'm not supposed to talk about my other granddaughter, so let's not get into that.

"Q.  I'm not saying anything.

"A.  I called him. He's the one that called me. Then when I found out about my other granddaughter then I called him."

Ambris-Morales sought a recess and moved for a mistrial based upon Moreno's violation of the court's pretrial order in limine. After hearing arguments of counsel, the district court denied the motion for mistrial but offered to admonish the jury to disregard Moreno's last statements.

"Well, Mr. Gipson, I have to agree with Mr. Schuster that even though the witness was nonresponsive you were dangerously close to a line that I'm sure you don't want to cross. So I'm not going to grant your request for a mistrial. So my next question becomes, would you like me to consider admonishing the jury to disregard the witness' last statements?"

Ambris-Morales declined the court's offer to admonish the jury. However, the court decided to admonish the jury on its own initiative, stating:  "Ladies and gentlemen of the jury, before we continue I'm going to instruct that you disregard the witness' last statements and that you not take those statements into consideration when you're debating this case and trying to reach a verdict." Through the remainder of the trial, no witness hinted at other allegations of sexual abuse leveled against Ambris-Morales.

4

A district court possesses broad discretion in deciding whether to declare a mistrial. When reviewing the district court's decision, an appellate court reviews it for abuse of discretion. *State v. Moyer*, 302 Kan. 892, 906, 360 P.3d 384 (2015). An abuse of discretion occurs when a judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would take the view adopted by the trial court; (2) based on an error of law; or (3) based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party alleging an abuse of discretion bears the burden of establishing such abuse. *State v. Wells*, 289 Kan. 1219, 1227, 221 P.3d 561 (2009).

K.S.A. 22-3423(1) provides:

"(1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:

(a) It is physically impossible to proceed with the trial in conformity with law; or

(b) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law and the defendant requests or consents to the declaration of a mistrial; or

(c) Prejudicial misconduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution; or

(d) The jury is unable to agree upon a verdict; or

(e) False statements of a juror on *voir dire* prevent a fair trial; or

(f) The trial has been interrupted pending a determination of the defendant's competency to stand trial."

In reviewing Ambris-Morales' brief, we cannot identify what subsection of the statute he is relying on, but the factual allegations suggest subsection (c), and we will proceed with that subsection as the point being raised on appeal.

In evaluating a motion for mistrial, the district court must first determine whether the complained-of error constituted a fundamental failure in the proceeding. If so, the court determines whether the trial may continue without injustice to the injured party by

removing the damaging effect of the error by admonition, jury instruction, or other action. If the remedial efforts are insufficient to remove the damaging effects of the error, the court must determine whether the degree of prejudice results in an injustice. *State v. Santos-Vega*, 299 Kan. 11, 23, 321 P.3d 1 (2014).

Ambris-Morales implies the district court failed to find a fundamental failure in the proceeding because the district court did not address the prejudicial nature of the comments. A district court is not required to expressly find the alleged error constitutes a "fundamental failure in the proceeding." *State v. Kleypas*, 305 Kan. 224, 275, 382 P.3d 373 (2016). Contrary to Ambris-Morales' interpretation of the record, the district court implicitly concluded Moreno's unsolicited comments about allegations against Amrbis-Morales by another granddaughter did constitute a fundamental failure in the proceeding. The district court acknowledged Moreno's comments were nonresponsive to the question posed by defense counsel. It remained open to the possibility of admonishing the jury, ultimately concluding an admonishment was warranted. The district court's actions clearly reflect Moreno's comments constituted a breakdown in the trial proceedings and it took remedial action.

Ambris-Morales also contends the district court held defense counsel opened the door to the impermissible comments by Moreno. Ambris-Morales is incorrect. Instead, the court declined to order a mistrial because Moreno's improper comments, while nonresponsive to the questions posed by defense counsel, were prompted by questions "dangerously close to a line that I'm sure you don't want to cross." These comments made by the district court related to defense counsel's questions of Moreno about calling Ambris-Morales after I.S. made her allegations of sexual abuse. However, the court did not conclude the door was opened by defense counsel to allow the previously excluded K.S.A. 60-455 evidence. The court correctly concluded Moreno's comments were improper and admonished the jury accordingly.

Our next concern is whether the district court abused its discretion in finding the fundamental failure in the proceeding caused by Moreno's improper response could be cured or mitigated through the court's admonition, thus eliminating the prejudicial effect of the response and Ambris-Morales' ability to obtain a fair trial. See *State v. Sherman*, 305 Kan. 88, 119, 378 P.3d 1060 (2016).

"Appellate courts reviewing the second part for an injustice may take a broader view than the trial court because appellate courts may examine the entire record. The degree of certainty required to conclude an injustice did not occur varies depending on whether the fundamental failure infringes on a constitutional right or not. To declare a nonconstitutional error harmless the appellate court must apply K.S.A. 60-261 and K.S.A. 60-2015 to determine if there is a reasonable probability that the error will or did affect the trial's outcome. And if the fundamental failure infringes on a right guaranteed by the United States Constitution, the appellate court applies the constitutional harmless error analysis defined in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967). [Citation omitted.]" *State v. McCullough*, 293 Kan. 970, 981, 270 P.3d 1142 (2012).

Here, because we are presented with a violation of the district court's order regarding the admission of prior-bad-acts evidence under K.S.A. 2016 Supp. 60-455, the burden of persuasion that the error is harmless is found in K.S.A. 2016 Supp. 60-261, not in *Chapman*. See *State v. Verser*, 299 Kan. 776, 786, 326 P.3d 1046 (2014).

"Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." K.S.A. 2016 Supp. 60-261.

We note the similarity of this case to *State v. Rinck*, 256 Kan. 848, 853-54, 888 P.2d 845 (1995). In *Rinck*, during the defendant's trial for aggravated robbery, a

prosecution witness testified the defendant had been in prison when questioned by the prosecutor about the length of the witness' relationship with the defendant. The witness did not comment on the reason for the defendant's incarceration. As in this case, the *Rinck* court concluded the objectionable statements by the witness were not solicited by counsel. The objectionable evidence was not presented again during the course of the trial. 256 Kan. at 853. Under the circumstances, the court held the objectionable comment harmless. 256 Kan. at 854.

Unlike *Rinck*, the district court here gave the jury an admonishment to ignore the nonresponsive statements of Moreno. Kansas appellate courts presume the jury followed the district court's admonishment. See *State v. Becker*, 290 Kan. 842, 856, 235 P.3d 424 (2010).

Perhaps Moreno's comments implied the existence of another improper sexual relationship between the defendant and a different granddaughter, but they did not explicitly mention sexual activity. Moreno merely stated she was calling Ambris-Morales after she "found out about her other granddaughter." Even if no innocent explanation may be attached to this statement, the phone call about the other granddaughter was not mentioned again during the trial. The case against Ambris-Morales clearly involved credibility determinations, but he presented no evidence, either independently or through cross-examination, to suggest a motive for I.S. to falsely report sexual abuse by him. Defense counsel implied Moreno possessed a motive to fabricate allegations against Ambris-Morales, but this suggestion was neither strengthened nor diminished by the other phone call being mentioned. Given the totality of the evidence presented at trial and the district court's admonition, there is no reasonable probability Moreno's limited nonresponsive answer to the question presented by defense counsel affected the jury's verdict.

An appellate court will not reverse a district court's discretionary decision on a request for a mistrial absent substantial prejudice to the defendant. See *State v. Harris*, 293 Kan. 798, 816-17, 269 P.3d 820 (2012); *State v. McCorgary*, 224 Kan. 677, 687, 585 P.2d 1024 (1978). Ambris-Morales has failed to establish substantial prejudice to render the district court's denial of the motion for mistrial unreasonable. Consequently, we find no abuse of discretion when the district court denied the motion for mistrial.

*We observe prosecutorial error but find it harmless.*

Ambris-Morales next contends his right to a fair trial was undermined by prosecutorial error during the rebuttal closing arguments. Specifically, he claims the prosecutor improperly commented on the testimony of Cartwright, the forensic examiner who interviewed I.S., and commented favorably on I.S.'s credibility/honesty. Ambris-Morales did not object to the statements during Cartwright's testimony or during the State's rebuttal closing arguments.

Recently, the Kansas Supreme Court recast judicial review of claims involving improper comments by the prosecution in closing arguments. See *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). But the *Sherman* court provided no indication it was altering its long-standing tradition of conducting de novo review of a claim of prosecutorial error during closing arguments when the claim is raised for the first time on appeal. See *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009); *State v. McCorkendale*, 267 Kan. 263, 278, 979 P.2d 1239 (1999); *State v. Sperry,* 267 Kan. 287, 308-09, 978 P.2d 933 (1999). Accordingly, we will review Ambris-Morales' claim.

> "Appellate courts will continue to employ a two-step process to evaluate claims of prosecutorial error. These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude

9

afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' *State v. Sprague*, 303 Kan. 418, 430, 362 P.3d 828 (2015)." *Sherman*, 305 Kan. at 109.

Ambris-Morales challenges the State's rebuttal comments on Cartwright's opinion about I.S.'s credibility. Initially, the prosecution responded to defense counsel's attack on Moreno by attempting to explain her failure to report the allegations of abuse by pointing out that her credibility is relatively immaterial if the jury believed I.S. The State then discussed I.S.'s credibility in the following manner:

"I specifically asked Ms. Miah Cartwright, what do—well I asked her the consistency between the statements that she made to grandma in her interview and the testimony today, if that's all consistent what does that show? She stated specifically about [I.S.] her consistency shows that she's telling the truth."

Next, the State discussed Cartwright's observations of I.S.'s demeanor before and after she broached the subject of Ambris-Morales with I.S. The State went on to explain how I.S. had been consistent, including another reference to Cartright's testimony.

10

"Minor inconsistencies are not reasonable doubt for a six and a nine year old now talking about something that happened two years ago. Minor inconsistencies are what happened. The major consistencies are what you need to focus on. She was extremely consistent in the fact of what she was wearing, where it was when she woke up, what she did after she got off the bed. The type of trauma she [*sic*] that she experienced when she talked about that in the video and talked about that today, that was all majorly consistent and that's what you guys need to focus on. Both the consistency through her statement to her grandma, to her interview back in January and her testimony that you had all heard today, that—and . . . Cartwright's professional opinion after 3,000 interviews, that consistency shows that she's telling the truth."

Notably, Ambris-Morales does not contend the State's comments inaccurately reflected the evidence adduced at trial or that the prosecutor interjected his personal opinion about I.S.'s credibility. See *State v. Carter*, 305 Kan. 139, 156, 380 P.3d 189 (2016) ("But a prosecutor must do so by basing the comment on evidence and reasonable inferences drawn from that evidence and without stating his or her own personal opinion concerning a witness' credibility or accusing a witness or defendant of lying."). Rather, Ambris-Morales claims that the prosecutor committed error during his closing rebuttal argument by referring to the forensic examiner's testimony that improperly bolstered I.S.'s credibility.

A witness may not be asked to comment upon the credibility of another witness— the State's questions to Cartwright asking her to opine about I.S.'s credibility were improper. See *State v. Horton*, 300 Kan. 477, 487, 331 P.3d 752 (2014) ("An expert's opinion is admissible up to the point where expressing the opinion requires the expert to pass upon the credibility of witnesses or the weight of disputed evidence."). However, Ambris-Morales did not object to that testimony as it was offered at trial and did not object to the State's closing rebuttal remarks. Even without the timely objection by defense counsel, we can, and we will, proceed to address the propriety of the State's closing rebuttal argument.

11

Here, we are faced with unique facts. The record reflects that during his cross-examination of Cartwright, defense counsel challenged I.S.'s honesty and credibility. He commented on how the jury should consider I.S.'s inconsistent testimony. Then, in his closing argument, he expanded on the issue when he said: "When the forensic interviewer was speaking, Ms. Cartwright, she indicated that lack of consistency could mean dishonesty. It could mean coaching. It could mean that she simply forgot."

Thus, the State's rebuttal argument was directly responding to defense counsel's closing argument. Should we find error because the State responded to defense counsel's comment in closing? This is a close call since the State's right to respond has limits, even though one could argue the door was opened by the defense. See *State v. Sprague*, 303 Kan. 418, 429, 362 P.3d 828 (2015) (when responding to defense arguments, the "open-the-door rule does not insulate a prosecutor from a finding of [error]"). Even though we ultimately find this error was harmless, we caution prosecutors not to go down this path even though the door appears open. There are ways to discuss the expert's testimony without crossing the line. We know this can be difficult when the improper evidence was admitted without objection. The law is clear, one cannot ask a witness to comment on the credibility of another witness. See *State v. Crum*, 286 Kan. 145, 151-52, 184 P.3d 222 (2008) ("We have plainly said that '[q]uestions which compel a defendant or witness to comment on the credibility of another witness are improper' because weighing the credibility of witnesses 'is the province of the jury.' [Citation omitted.]") "Moreover, an even more basic rationale for prohibiting a question which invites the witness to comment on the truthfulness of another witness is that such a question is argumentative and seeks information beyond the witness' competence. [Citation omitted.]" *Crum*, 286 Kan. at 152.

Here, Ambris-Morales is not challenging (and cannot properly challenge) the admission of the improper testimony. Thus, his only challenge relies upon the State's rebuttal closing argument, and we can safely conclude the State's rebuttal closing

argument, although improper, was harmless. We make this conclusion because both the State and the defense, when presenting evidence to the jury, presented testimony about I.S.'s consistency or lack of consistency as factors to consider in determining her honesty. As consistency in accounts is generally the basis for assessing a witness' credibility, the prosecutor's comments do not really add much to the jury's knowledge given the testimony it heard during the trial. Under these circumstances, the prosecutor's error is harmless, and we are convinced "there is no reasonable possibility that the error contributed to the verdict." *Sherman*, 305 Kan. at 109.

    Affirmed.